IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MICHAEL R. RAY, | ) | C/A No. 4:07-1143-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| JOHNNY SIMON, ET. AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, Michael R. Ray ("plaintiff/Ray"), a pro se prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2241 and alleges claims pursuant to 42 U.S.C. § 1983/Bivens.[1]  This matter is before the Court on the plaintiff's motions for default (documents # 41 and 66), for a deposition subpoena (document # 52), for an order to show cause (document # 63), and to stay (document # 64); the federal defendants' motion for a protective order (document # 61) and to dismiss or, alternatively, for summary judgment (document # 53); and the New Jersey defendants' motions to set aside default entry (document # 84) and to dismiss (document #  87).

The plaintiff filed this action on June 19, 2007.  On October 5, 2007, the federal defendants Johnny Simon, Matthew Hamidullah, Roy Lathrop, Arnita Jones and the current Warden of the Federal Correctional Institution ("FCI- Estill") filed a motion to dismiss or, alternatively, for summary judgment, along with supporting memorandum and exhibits.[2]  The undersigned issued an order filed October 9, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the plaintiff

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

[2]As matters outside of the pleadings were presented, the undersigned will treat the federal defendants' motion as one for summary judgment.  Fed.R.Civ.P. 12(b).

of the summary judgment procedure and the possible consequences if he failed to respond adequately. On October 16, 2007, the petitioner filed a response to the federal defendants' summary judgment motion. On February 27, 2008, the remaining defendants, Kenneth Crane, Ritchie King, Thomas Mulvaney, Nina Muse, and Kerry L. Menchen, (hereinafter referred to as the New Jersey defendants) filed a motion to dismiss. On February 28, 2008, pursuant to Roseboro, the plaintiff was again advised of the summary dismissal procedure and the possible consequences if he failed to respond adequately. On March 6, 2008, the plaintiff responded to the New Jersey defendants' motion to dismiss.

## I. FACTS/PROCEDURAL HISTORY

The plaintiff is a federal inmate currently incarcerated at the FCI-Estill. On August 25, 2004, the plaintiff was sentenced by the United States District Court for the District of South Carolina to 70 months imprisonment for mail fraud. His anticipated release date is April 14, 2008.

In October 2005, the Atlantic County Sheriff lodged a detainer against the plaintiff with the Bureau of Prisons ("BOP") for pending state charges in New Jersey pursuant to the Interstate Agreement on Detainers ("IAD") Act. (Compl. at 3; Fed. Defs' Mem. Supp. Mot. to Dismiss Ex. 3.)[3] On October 25, 2005, the BOP notified the plaintiff of the detainer and his right to request disposition of the charges under the IAD Act. (Compl. 3-4; Fed. Defs' Mem. Supp. Mot. to Dismiss Ex. 4.) The plaintiff was advised that if he elected not to request disposition of the charges, the prosecuting officer in the jurisdiction of the indictment could institute proceedings at any time. (Compl.4; Fed. Defs' Mem. Supp. Mot. to Dismiss Ex. 4.) The plaintiff was also advised how to appeal a decision by the prosecuting officer to initiate proceedings. (Id.) The plaintiff did not request disposition of the untried charges. (Id.; Compl. at 4.)

---

[3]These charges were for bail jumping, falsifying records, and forging and uttering. (Compl. at 3.)

2

On March 7, 2006, the New Jersey officials began proceedings to obtain custody of the petitioner so that he could be tried on the pending state charges. (Compl. at 4 and Ex. C.) On March 22, 2006, FCI- Estill staff received a request for temporary custody from the New Jersey prosecuting officer. (Federal Defs'. Mem. Supp. Summ. J. Mot. Ex. 5.) The plaintiff was given a copy of this notice. (*Id*.) The plaintiff alleges he verbally requested that defendant Johnny Simons, Inmate Systems Manager at FCI-Estill, provide him with a <u>Cuyler</u>[4] hearing. (Compl. at 4.) He alleges that Simons stated that he had no idea how to arrange such a hearing and that the plaintiff would have to speak with the Warden if he had any questions. (*Id*.)

The following day, March 23, 2006, the plaintiff filed an inmate request to staff members with the defendants former Warden Hamidullah and Simon and Steve LaBier, the Unit Manger, asking the Warden to deny New Jersey's request for temporary custody "based upon a severe interruption to [the plaintiff's] rehabilitative endeavors." (Compl. at 5.) The plaintiff also submitted a request for a pre-transfer <u>Cuyler</u> hearing and asked Simon to determine how he could request such a hearing. (*Id*.) The plaintiff alleges he did not receive any response from the Warden or Simon until he had already been transferred to New Jersey. (*Id*.) He states that LaBier responded that the plaintiff's rehabilitative efforts did not rise to a sufficient reason for the Warden to deny New Jersey's request. (*Id.* and Ex. E.) The plaintiff alleges, as a prophylactic measure, he wrote a detailed letter to Simon again requesting a <u>Cuyler</u> hearing. (*Id*.) The plaintiff alleges that on April 6, 2006, he had not received any response to his requests. Therefore, he filed an emergency petition for a pre-transfer <u>Cuyler</u> with the United States District Court for the District of South Carolina. (Compl. at 6.) On April 17, 2006, he states

---

[4]<u>Cuyler v. Adams,</u> 449 U.S. 433 (1981).

3

he mailed another request for a hearing to the Warden, Simon, and the United States Attorney General. (*Id.*)  The plaintiff states that the emergency petition was docketed on April 20, 2007. (*Id.* at 7.)

Also, on April 20th, the plaintiff alleges he met with defendant Arnita Jones, Inmate Systems Manager at FCI-Estill, after being referred to her by the Warden, and defendant Vicky Kinard from the records department at FCI-Estill. (*Id.*)  During this meeting, the plaintiff alleges that Kinard called defendant Roy Lathrop, a paralegal at the Consolidated Legal Center for the BOP at FCI-Estill.  (*Id.*) The plaintiff states he spoke with Lathrop outlined the situation for him, including his requests for a hearing, and the pertinent information and records were then faxed to Lathrop.  (Compl. at 7.)   He alleges the next day, April 21st,  Kinard told him he would not be transferred to New Jersey until there was an order from a judge telling them he could go.  (Compl. at 8.)   He alleges the following defendants were aware of his request for a hearing: the Warden, Simon, Jones, Lathrop, and Menchen. (*Id.*)

On April 25, 2006, the plaintiff  was placed on a bus and transported to New Jersey.   The plaintiff alleges that Kinard said that Lathrop had called and told her to put him on the bus.  (Compl. at 11.)  The plaintiff alleges that on that same day, the undersigned issued an order to show cause ordering the defendants to reply by May 1, 2006, to the plaintiff's request for a hearing.  (*Id.*)  He alleges Lathrop knew the order was imminent and placed him on that bus prior to the order arriving at the BOP.  (Compl. at 12.)   Based on the foregoing, the plaintiff alleges the defendants Simon, Lathrop, the Warden, Jones, Kerry Menchen, and Nina Muse all acted purposefully and with deliberate indifference to his due process rights and conspired to facilitate the transfer of the plaintiff to New Jersey.  (*Id.*)  The plaintiff alleges that he was in transit for sixteen days during which time the BOP could have returned him to South Carolina.  (*Id.*)

4

The plaintiff also alleges that the defendants New Jersey Deputy Attorney General Kerry Menchen and Nina Muse, Acting IAD Act State Administrator, included false statements in the IAD Act documents they filed. (Compl. at 13.)  He alleges that the documents state that the plaintiff would be taken into custody at FCI-Estill and transported by New Jersey defendants Kenneth Crane, David Caton, and Thomas Mulvaney.  He states, however, that he was transported to New Jersey by the United States Marshal Service ("USMS"). (Compl. at 14.)  Further, he states "to add insult to injury," he was picked up in New Jersey at the USMS by defendants Crane and Ritchie King, who was not listed on any IAD Act document.  As a result, he alleges defendants Crane and King "illegally took custody of [him] in direct violation of the agreements issued and the IAD itself." (Compl. at 15, 19.) He also alleges defendant King returned him to the USMS without proper authorization. (Compl. at 25.)

The plaintiff further contends defendant Mulvaney signed and falsely swore that he was traveling to South Carolina to transport the plaintiff. (*Id*.)  He alleges the New Jersey state defendants conspired with each other and the BOP staff to illegally remove the plaintiff from federal to state custody in violation of the IAD Act depriving him of his due process and equal protection rights. (*Id*.) The plaintiff also alleges the New Jersey defendants violated New Jersey extradition laws. (Compl. at 19.)  Specifically, he alleges that there was not a governor's warrant and the affidavits were not proper. (Compl. at 19, 22, and 25.)

In New Jersey, the plaintiff pled guilty to jumping bail and was sentenced on that charge and a prior theft by deception conviction. (Compl. at 17.)  The plaintiff alleges that he specifically preserved his right to later challenge any violations of the IAD Act and/or violations of Cuyler. (*Id.*) The plaintiff was sentenced to 18 months, to run consecutively to his federal sentence, and ordered to

pay $6500 in restitution and $310 in fines and fees. (Fed. Defs.' Mem. Supp. Mot. to Dismiss.) Copies of these judgments were provided to the BOP on September 14, 2006, along with a request from the New Jersey Department of Corrections ("NJDOC") to lodge a detainer which was lodged as requested. (*Id*. Ex. 1.) On September 26, 2006, the plaintiff was returned to FCI- Estill.

Further, the plaintiff alleges that while housed in New Jersey he was charged a $50.00 user fee each month and medical and prescription fees ranging from $7.00- $10.00. He contends these fees violate the IAD Act as the IAD Act states that the receiving state will assume all housing and medical costs. (Compl. at 18.) He specifically contends that defendants Menchen violated the IAD Act when she signed the agreement whereby New Jersey agreed to pay these fees and defendant Muse violated the IAD Act by allowing him to be charged these fees. (Compl. at 23, 26.)

The undersigned notes that the plaintiff has filed several actions challenging his New Jersey convictions and his transfer to New Jersey pursuant to the IAD: Ray v. Warden, FCI-Estill, C/A No. 4:07-1705 (D.S.C. 2007); Ray v. Hamidullah, C/A No. 4:06-1201 (D.S.C. 2006); Ray v. State of New Jersey, C/A No. 4:06-1178 (D.S.C. 2006);[5] United States v. Ray, C/A No. 4:02-0687 (D.S.C. 2002); Ray v. Simon, C/A No. 4:07-01143 (D.S.C. 2007); Ray v. Merline, C/A No.1:06-3040 (D.N.J. 2006); and Ray v. State of New Jersey, Docket No. 06-1521 (3d Cir. 2006).

## II. SUMMARY JUDGMENT/ MOTION TO DISMISS STANDARDS

As stated above, on October 5, 2007, the federal defendants filed a memorandum of law in support of their motion for summary judgment and plaintiff filed a response in opposition on October 16, 2007. Further, on February 27, 2008, the New Jersey defendants filed a motion to dismiss pursuant

---

[5]Recently, the Fourth Circuit affirmed the district court's decision in Ray v. Hamidullah and Ray v. New Jersey, Op. 07-7121 (4th Cir. filed Jan. 25, 2008).

to Rule 12 (b)(1), (2), and (6), and the plaintiff filed a response in opposition to this motion on March 6, 2008.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See* Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because

7

the plaintiff had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

A motion to dismiss under Rule 12 tests the sufficiency of the complaint. It does not resolve conflicts of facts. A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. Sumpter v. United States, 2007 WL 776113 at *1 (D.S.C. 2007). A motion questioning subject matter jurisdiction must be considered before other challenges because the court must find it has jurisdiction before determining the validity of any claims brought before it. Evans v. B.F. Perkins Co, 166 F.3d 642, 647 (4th Cir.1999).

When a defendant files a motion to dismiss the plaintiff's complaint for lack of jurisdiction under Rule 12(b)(2), the plaintiff must prove jurisdiction by a preponderance of the evidence. Mylan Labs., Inc. v. Akzo, 2 F.3d 56, 59-60 (4th Cir.1993). When a court declines to hold an evidentiary hearing and decides to rely on the parties' pleadings, affidavits, and other legal documents, the plaintiff faces a lesser standard such that the plaintiff only must "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id.

A motion to dismiss under Rule 12(b) (6) should be granted only if "it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Ridpath v. Bd. of Governors, 447 F.3d 292, 317 (4th Cir. 2006)(quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)). A court in ruling on such a motion should accept the plaintiff's factual allegations as true and view the complaint in the light most favorable to the plaintiff. See, e.g., Franks

8

v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)(*quoting* Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134

(4th Cir. 1993)).  Put another way, "[a] Rule 12(b)(6) motion to dismiss should not be granted unless

it appears certain that the plaintiff can prove no set of facts which would support its claim and would

entitle it to relief."  T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC, 385 F.3d 836,

841 (4th Cir. 2004) (internal citations omitted).

### III.  PLAINTIFF'S MOTION FOR DEFAULT

The plaintiff has filed several motions seeking a default judgment against the New Jersey

defendants.  (Documents # 38, 41, and 66).  The New Jersey defendants have filed a motion to set

aside the default entry.  (Document # 86.)  However, a review of the docket in this case shows that

the clerk has not entered a default.  The issue then is whether the court should grant the plaintiff's

motions for default in the first place rather than set aside an entry of default.

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom

a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these

rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

Fed.R.Civ.P. 55(a).  Upon motion and notice to the party against whom judgment by default is sought,

either the Clerk or the Court, in its discretion, may enter judgment by default. Fed.R.Civ.P. 55(b).

Rule 55(b) states:

(b) Judgment. Judgment by default may be entered as follows:

(1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or
for a sum which can by computation be made certain, the clerk upon request of the
plaintiff and upon affidavit of the amount due shall enter judgment for that amount and
costs against the defendant, if the defendant has been defaulted for failure to appear
and is not an infant or incompetent person.

(2) By the Court. In all other cases the party entitled to a judgment by default shall
apply to the court therefor; but no judgment by default shall be entered against an

9

infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Generally, the entry of default and default judgment is disfavored because it prevents a plaintiff's claims from being decided on the merits. 10 Wright, Miller & Kane, Federal Practice and Procedure § 2681 (1983). "There is a strong public policy, supported by concepts of fundamental fairness, in favor of trial on the merits, *see, e.g.,* Jackson v. Beech, 636 F.2d 831, 835 (D.C.Cir.1980), particularly when monetary damages sought are substantial." Swink v. City of Pagedale, 810 F.2d 791, 792 n. 2 (8th Cir.1987)(internal citations omitted). Accordingly, entry of judgment by default is a drastic remedy which should be used only in extreme situations. Flaksa v. Little River Marine Construction Co., 389 F.2d 885 (5th Cir. 1968).

The court is required to exercise "sound judicial discretion" in deciding whether to enter default judgment. "This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default." *Id*. The court should consider a number of factors in determining whether to enter default and default judgment, including: (1) prejudice to the plaintiff if default judgment is not granted; (2) whether the defendant has a meritorious defense; and (3) whether the defendant's delay was the result of culpable misconduct. Hall v. Logistics, Inc., 2006 WL 1889165 (D.S.C. July 7, 2006), *citing* Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir.1987). "Where a defendant appears and indicates a desire to contest an action,

a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on the merits." *See, e. g.*, Lee v. Brotherhood of Maintenance of Way Employees, 139 F.R.D. 376, 381 (D.Minn.1991)(internal citations omitted). A default judgment should be entered only if other sanctions would not suffice. Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir. 1987).

The New Jersey defendants have appeared and filed a motion to dismiss in which they raise several meritorious defenses to the plaintiff's claim. (*See* document # 87.)  The New Jersey defendants have set forth a reasonable explanation for their failure to timely answer the plaintiff's complaint and there does not appear to be any culpable misconduct[6].  Further, as the court has not ruled on the federal defendants' summary judgment motion, the undersigned cannot discern any prejudice to the plaintiff.[7] Accordingly, the undersigned recommends the plaintiff's motions for default be denied.

## IV.  HABEAS CLAIMS[8]

As noted above, this action centers on the plaintiff's contention that the BOP violated his constitutional rights by denying him a pre-transfer Cuyler hearing under the IAD Act prior to his transfer to New Jersey to stand trial on state charges.  In this action, the plaintiff alleges both habeas and § 1983/Bivens claims regarding the denial of a pre-transfer hearing.   As an initial matter, the

---

[6]The New Jersey defendants state that following service of the complaint, there was a delay before it was passed along to the Office of the Attorney General and additionally the defendants had to request representation, and the Attorney General was required to conduct an investigation under New Jersey state law.  (Defs.' Mem. Supp. Mot. to Set Aside Default at 2-3.)  Further, local counsel had to be obtained and financial arrangements worked out.  (*Id*. at. 3.)

[7]The undersigned notes the plaintiff states he has been prejudiced because he will be subjected to an illegal transfer to New Jersey solely because of the defendants' delays.  (Pl.'s Mem. Opp. Mot. to Set Aside Default at 4.)  However, as discussed below, any relief obtained in this §1983 action cannot imply that the plaintiff's New Jersey detainer or convictions are invalid.

[8]If the District Court adopts the recommendation to dismiss the habeas claims, the undesigned notes that the current Warden of FCI -Estill should be dismissed as a defendant.

11

undersigned notes that the plaintiff's habeas claims should be dismissed as successive as the plaintiff has previously raised these claims in Ray v. Hamidullah, C/A No. 4:07-1705 (D.S.C. 2007). In his prior habeas action, the plaintiff also challenged the BOP's failure to provide him with a Cuyler pre-transfer hearing and the United States District Court recently held that the plaintiff's transfer to New Jersey without a pre-transfer hearing was not a sufficiently fundamental defect to warrant any habeas relief.[9]

Prior to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the ensuing changes to the federal habeas corpus statutes, 28 U.S.C. § 2244 authorized dismissal of a successive habeas petition that presented "no new grounds not heretofore presented and determined." McClesky v. Zant, 499 U.S. 467, 483 (1991). That version of § 2244(a) provided:

> No circuit or district judge shall be required to entertain an application for writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for writ of habeas corpus and the petition presents no new ground not heretofore presented and determined, and the judge or court is satisfied that the ends of justice will not be served by such an inquiry.

In McClesky, the United States Supreme Court further found that raising a new claim in a subsequent habeas petition that could have been raised in a prior petition was an abuse of the writ. 499 U.S. at 489. The abuse of the writ doctrine is a modified res judicata rule. Felker v. Terpin, 518 U.S. 651, 664 (1996).

However, with the 1996 statutory amendments, § 2244(a) now reads:

> No circuit or district judge shall be required to entertain an application for writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a

___

[9]On June 5, 2008, the Fourth Circuit Court of Appeals denied the plaintiff's petition for a writ of mandamus in his habeas action as moot. Ray v. Hamidullah, C/A No. 4:07-1705 (Doc. # 57.)

court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for writ of habeas corpus, except as governed in section 2255.

Prior to the 1996 amendments, several circuits had held that where a plaintiff filed a § 2241 action which was dismissed on the merits, § 2244(a) barred a second § 2241 habeas action as an abuse of the writ. *See e.g.* George v. Perrill, 62 F.3d 333 (10th Cir. 1995); Glumb v. Honsted, 891 F.2d 872 (11th Cir. 1990); Poyner v. U.S. Parole Comm., 878 F.2d 275, 277 (9th Cir.1989); Sacco v. U.S. Parole Comm., 639 F.2d 441 (8th Cir.1981). Although the new version of § 2244(a) does not expressly apply its provisions to habeas cases filed pursuant to § 2241, several circuit and district courts have held that the AEDPA version of § 2244(a) also bars a second § 2241 as a successive petition where the grounds raised in the second petition were denied in a prior § 2241 action. *See* Valona v. United States, 138 F.3d 693, 695 (7th Cir.1998); Chambers v. United States, 1106 F.3d 472, 475 (2d Cir. 1997); Peagler v. Yancey, 2006 WL 2434037 (D.S.C. 2006)(unpublished); Singletary v. Dewalt, 2005 WL 1162940 (E.D.Va. 2005)(unpublished); Queen v. Smith, 2005 WL 1377835 (M.D.Pa. 2005)(unpublished).

In order for a petition to be considered successive, the first petition must have been dismissed on the merits.  Harvey v. Horan, 278 F.3d 370 (4th Cir.2002).   Here, the plaintiff's separate § 2241 petition was denied and dismissed on the merits. Accordingly, because the habeas grounds raised in the instant petition were and/or could have been raised in the plaintiff's separate habeas petition and/or were actually adjudicated on the merits by the United States District Court in Ray v. Hamidullah, C/A

13

No. 4:07-1705 (D.S.C. 2007), the plaintiff's habeas claims should be denied and dismissed with prejudice.[10]  The plaintiff's remaining claims are those brought pursuant to § 1983/Bivens.[11]

## VI. FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.  Qualified Immunity

In their motion for summary judgment, the federal defendants argue, inter alia, even if the federal defendants violated the plaintiff's rights, they are entitled to qualified immunity against his claims for monetary damages.   The undersigned agrees.

Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation.  The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity.  That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

---

[10]Moreover, extradition procedures, even if they violate federal rights, have no bearing, direct or implied, on the underlying guilt or innocence of the person extradited. *See* In re Strauss, 197 U.S. 324, 333 (1905) ("[T]he process of extradition . . . is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt.").  Neither do the extradition decisions of asylum states. *See* Michigan v. Doran, 439 U.S. 282, 290 (1978) (holding "when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination.").  "Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language . . . of the Constitution," which "served important national objectives of a newly developing country striving to foster national unity" by "preclud[ing] any state from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states." *Id*. at 287-88.

[11]A Bivens claim arises when a federal government official, acting under color of federal law, violates a individual's rights under the United States Constitution. Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). The undersigned notes that case law involving § 1983 claims is applicable in Bivens actions and vice versa.  Farmer v. Brennan, 511 U.S. 825 (1994).

established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow</u>,

457 U.S. at 818.   In determining whether a right is clearly established, the court must look first to the

decisions of the United States Supreme Court, the United States Court of Appeals for the Fourth

Circuit, and the highest court of the state in which the case arose. <u>Edwards v. City of Goldsboro</u>, 178

F.3d 231, 251 (4th Cir.1999).

   In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for
> civil monetary damages if the officer's conduct does not violate clearly
> established statutory or constitutional rights of which a reasonable
> person would have known. In determining whether the specific right
> allegedly violated was 'clearly established,' the proper focus is not
> upon the right at its most general of abstract level, but at the level of its
> application to the specific conduct being challenged. Moreover, the
> manner in which this [clearly established] right applies to the actions
> of the official must also be apparent. As such, if there is a "legitimate
> question" as to whether an official's conduct constitutes a constitutional
> violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir.1994) (internal citations omitted).

   In <u>Torchinsky v. Siwinski</u>, 942 F.2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals

explained the rationale for <u>Harlow</u> qualified immunity:

> The grant of qualified immunity to government officials ensures that
> these officials can perform their duties free from the specter of endless
> and debilitating lawsuits. Without such immunity, the operations of
> government would be immobilized. Permitting damages suits against
> government officials can entail substantial social costs, including the
> risk that fear of personal monetary liability and harassing litigation will
> unduly inhibit officials in the discharge of their duties.

<u>Torchinsky</u>, 942 F.2d at 260-261 (citations omitted).

   In <u>Torchinsky</u>, the court further noted that "a particularly appropriate procedure for

determining an official's entitlement to qualified immunity is summary judgment." *Id*. The <u>Torchinsky</u>

15

court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." *Id*. at 261 (citing Sevigny v. Dicksey, 846 F.2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F.2d at 261 (*citing* Collinson v. Gott, 895 F.2d 994 (4th Cir.1990)). As the Fourth Circuit explained in Swanson v. Powers, 937 F.2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F.2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d 295, 298 (4th Cir.1992) (citations omitted).

Therefore, for a plaintiff to recover, he must show the defendant (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be

apparent.  In this case, the undersigned concludes that the federal defendants did not violate clearly established law and are entitled to qualified immunity.

The plaintiff contends that he was entitled to a pre-transfer hearing pursuant to Cuyler v. Adams, 449 U.S. 433 (1981), and South Carolina extradition laws. (Compl. at 20-22.)  In Cuyler, the United States Supreme Court considered whether a prisoner incarcerated in a jurisdiction that has adopted the Uniform Criminal Extradition Act ("UCEA") is entitled to the procedural protections of that Act, specifically the right to a hearing prior to a prosecutor-initiated IAD Act transfer. Id. at 435. The Court found that the IAD Act implicitly incorporated the UCEA's pre-transfer hearing requirement as a matter of federal law.  The Court "conclude[d] as a matter of federal law that prisoners transferred pursuant to the provisions of the [IAD] are not required to forfeit any pre-existing rights they may have under state or federal law to challenge their transfer to the receiving State." Cuyler, 449 U.S. at 450.

The federal defendants concede that Cuyler does indicate that a pretransfer hearing is required in some cases.  However, the federal defendants argue that the holding in Cuyler is limited to situations where some other act, such as the UCEA, creates such an entitlement.  The federal defendants contend that Cuyler did not create an independent right for a pre-transfer hearing and the UCEA is inapplicable to the plaintiff.  The undersigned agrees.

The IAD Act is a compact entered into by 48 states and the District of Columbia to establish procedures for resolution of one state's outstanding charges against a prisoner of another state.  New York v. Hill, 528 U.S. 110, 111 (2000).  As "a congressionally sanctioned interstate compact" within the Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, the IAD Act is a federal law subject to federal construction. Id. at 111.  The IAD Act establishes two procedures by which a prisoner against whom a detainer has been lodged may be transferred to the temporary custody of

17

another state to stand trial for pending charges. Under Article III, a prosecutor or a prisoner may initiate the transfer for final disposition of pending charges. 18 U.S.C.A. App. 2, § 2, Art. III; IV. If the prisoner initiates the request for disposition, extradition is waived. 18 U.S.C.A App. 2, § 2, Art. III(e). However, if the prosecutor initiates the request for disposition, the inmate is entitled to some procedural protections. 18 U.S.C.A. App. 2, § 2, Art. IV(d). However, the IAD does not provide prisoners with a right to a pre-transfer hearing. The UCEA provides additional safeguards, such as pre-transfer hearing, but the United States has not adopted the UCEA.

Although the Fourth Circuit has not addressed this issue, other jurisdictions have held that federal inmates are not entitled to a pre-transfer Cuyler hearing under the IAD Act. For example, in Lynch v. Menifee, 2004 WL 1738888 * 6 (S.D.N.Y. 2004), the court held:

> This case is distinguishable from Cuyler in one key aspect: whereas the prisoner in Cuyler contested his transfer from one state to another, Lynch contests his transfer from federal to state custody. The IAD applies to the federal government as well as to the states, and for the purposes of the IAD, the United States is considered a "State." The United States, however, is not a signatory to the UCEA.App. I Unif.Crim. Extradition Act § 1 (listing "jurisdictions wherein [UCEA] has been adopted"); see, e.g., Mann v. Warden of Eglin Air Force Base, 771 F .2d 1453, 1454 (11th Cir.1985) ("[T]he United States has not adopted" the Uniform Criminal Extradition Act), cert. denied, 475 U.S. 1017, 106 S.Ct. 1200 (1986); Wilson v. Fenton, 684 F.2d 249, 252 (3d Cir.1982) ("[T]he United States is not a party to the Uniform Criminal Extradition Act, so that whatever protections are afforded under the Act could not be applied to Wilson, a federal prisoner."). On this basis alone, the holding in Cuyler does not extend to Lynch. See Cuyler v. Adams, 449 U.S. at 448, 101 S.Ct. at 711-12 ("a prisoner transferred against his will under Art. IV should be entitled to whatever 'safeguards of the extradition process' he might otherwise have enjoyed. Those safeguards include the procedural protections of the [Uniform Criminal] Extradition Act (in those States that have adopted it).")

See also Martin v. Pittman, 244 Fed.Appx. 597 (5th Cir. 2007)(UCEA has no application to transfers involving the federal government and thus there are here no UCEA pre-transfer hearing rights to be incorporated by the IAD Act ); Sorenson v. U.S., 539 F.Supp. 865, 866 (S.D.N.Y. 1982).

18

"[T]he United States is not a party to the Uniform Criminal Extradition Act, so that whatever protections are accorded under the Act could not be applied to a federal prisoner." Wilson, 684 F.2d at 252. As the UCEA does not apply, federal inmates who are sought for prosecution by a state are not entitled to a pre-transfer hearing because there is no independent requirement for such a hearing. *See e.g.* Mann, 771 F.2d at 1454. Based on the foregoing, the plaintiff was not entitled to a pre-transfer hearing pursuant to the IADA Act or the UCEA.

The plaintiff also contends that the BOP's own policy provides for a "pre-transfer" hearing under Cuyler." The BOP has established policy providing guidance on the implementation of the IAD Act in federal prisons. (Federal Defs.' Mem. Supp. Summ. J. Mot. Ex.10). Under the BOP's policy, a federal prisoner may challenge the prosecutor's request in writing to the Warden. The Warden has thirty days after receiving the prosecutor's request in which to decide whether to approve or disapprove of the prosecutor's request. Alternatively, the inmate may waive this determination and simply consent to the transfer. (*Id*. Ex. 10.)

Specifically, the plaintiff refers to the IAD Act Form V Request for Temporary Custody. (*Id*. Ex.5).[12] This form states: "Prior to transfer under this agreement, an Inmate may be afforded a judicial hearing (Cuyler) similar to that provided under the Uniform Extradition Act, in which the inmate may bring a limited challenge to the receiving state's request." (*Id*.)(emphasis added). However, this sentence alone does not indicate or create a statutory or constitutional right to a pre-transfer hearing.

_____

[12]The undersigned notes that the United States District Court in Ray v. Hamidullah, 2007 WL 465440 *3 (D.S.C. Feb 06, 2007), stated that "[t]his Bureau of Prisons document seems to contradict the position taken by the Respondent and it appears from this document that, at the very least, Bureau of Prisons policy provides for a "pre-transfer" hearing under Cuyler." This was clearly dicta and thus is not binding in this action. United States v. Pasquantino, 336 F.3d 321, 329 (4th Cir.2003)(dicta cannot serve as a source of binding authority in American jurisprudence).

*See* Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983 ).

Furthermore, the BOP policy does not even require that the plaintiff receive a pre-transfer hearing.   The BOP policy  uses the permissive term "may" and not mandatory terms such as shall or "must."  Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 346 (2005)(the word "may" customarily connotes discretion); *see also* Lopez v. Davis, 531 U.S. 230, 241 (2001)(contrasting Congress' use of the permissive "may" with the mandatory "shall").  The undersigned concludes that this BOP policy does not create an entitlement to a pre-transfer hearing.

Finally, the undersigned notes that the plaintiff has not set forth any South Carolina law which requires a pre-transfer hearing.  While South Carolina has adopted the IAD Act, which as stated above does not require a transfer hearing, it has not adopted the UCEA.[13]  S.C. Code Ann. §§ 17-9-10 through -70 sets out the extradition procedures applicable in South Carolina and a pre-transfer hearing is not required.  Based on the foregoing, the undersigned concludes that the plaintiff was not entitled to a pre-transfer hearing under any clearly established federal or state law.   Thus, the federal defendants are entitled to qualified immunity.

### B.  Subject Matter Jurisdiction

---

[13] South Carolina codified the IAD Act in S.C. Code Ann. § 17-11-10. Moreover, plaintiff was in Federal custody and South Carolina law would not apply.

The federal defendants also contend that the plaintiff has alleged that the individual federal defendants acted in the course of their employment making his claims against them claims in their official capacities.  Further, the federal defendants argue that when a plaintiff names as a defendant a federal employee in his official capacity, the action is actually one against the United States and the doctrine of sovereign immunity shield the United States from suit absent its consent to be sued.  (Fed. Defs.' Mem. Supp. Summ. J. Mot. at 5.)  The United States has not waived its sovereign immunity and thus the federal defendants contend this Court does not have subject matter jurisdiction.  (*Id*.)  The undersigned disagrees.

Federal courts have power under 28 U.S.C. § 1331 (1994) to award damages occasioned by infringements by federal officials of constitutionally protected interests.  Bivens, 403 U.S. 388.  Bivens recognized an action against federal officers sued in individual capacities, but not against the United States.  Radin v. United States, 699 F.2d 681, 684 (4th Cir. 1983)  Thus, to the extent defendants are being sued under Bivens in their official capacities, the claims are barred by the doctrine of sovereign immunity.  Sovereign immunity, however, does not bar damage actions against federal officials in their individual capacities for violation of an individual's constitutional rights.  Gilbert v. Da Grossa, 756 F.2d 1455, 1459 (*citing* Davis v. Passman, 442 U.S. 228 (1979).  Thus, to the extent defendants are being sued in their individual capacities under Bivens, the plaintiff's claims are not barred by the doctrine of sovereign immunity.

In his complaint, however, the plaintiff alleges he is suing the federal defendants in only their individual capacities.  (Compl. 2.)  He also specifically alleges the federal defendants were acting outside of the scope of their official duties and conspiring to deny him a pre-transfer hearing.  (Compl. 20-22.)  The federal defendants contend the plaintiff's allegations are against them in their official

21

capacities because any duty to provide the plaintiff with a hearing would stem from their employment and not any personal obligation. The plaintiff, however, is alleging the federal defendants did not fulfill their duty, thereby making their actions outside the scope of their employment. Even assuming there is any confusion in the complaint, giving the plaintiff's pleading the liberal construction to which it entitled, the undersigned concludes that the plaintiff's damages claims have been asserted against the named federal defendants only in their individual capacities. Cruz v. Beto, 405 U.S. 319 (1972)(holding a federal court is charged with liberally construing a complaint filed by a pro se litigant). Accordingly, the federal defendants are not entitled to dismissal based upon sovereign immunity.

### C. Failure to State a Claim

The federal defendants contend that the plaintiff has failed to state a claim because he was not entitled to a pre-transfer hearing and the denial of such a hearing was not a constitutional violation. As discussed above, when considering whether the federal defendants are entitled the qualified immunity, the undersigned concludes that the plaintiff has not alleged a constitutional violation. *See* Wirth v. Surles, 562 F.2d 319, 323 (4th Cir. 1977). Thus, the undersigned agrees with the federal defendants that the plaintiff he has failed to state a claim.

### D. Rule 8(a)

The federal defendants contend that the plaintiff has failed to comply with Fed.R Civ. P. Rule 8(a) (2). The undersigned disagrees.

Rule 8(a)(2) states that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type

against defendant." <u>Midgal v. Rowe Price-Fleming International, Inc.</u>, 248 f.3d 321, 326 (4th Cir. 2001).  This is especially true in a <u>Bivens</u> action where "liability is personal, based upon each defendant's own constitutional violations." <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir.2001). Recently, in <u>Erickson v. Pardus</u>, ___ U.S.___ 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), the United States Supreme Court held that to be comply with Rule 8(a)(2), "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " 127 S.Ct. at 2200 (*quoting* <u>Twombly</u>, 127 S.Ct. at 1964.  Here, it simply cannot be said that the plaintiff's pro se complaint fails to state a claim for which relief may be granted.  The complaint in this case does not contain merely bald conclusory allegations.   The undersigned is of the opinion that plaintiff's pro se complaint sufficiently sets forth allegations to satisfy Rule 8(a)(2). Accordingly, the complaint should not be dismissed for failing to comply with Rule 8(a)(2).

Based on the foregoing, it is recommended that the federal defendants' motion for summary judgment be granted because the plaintiff has failed to state a claim and, alternatively, the defendants are entitled to qualified immunity.

## VI.  NEW JERSEY DEFENDANTS' MOTION TO DISMISS

### A.  Personal Jurisdiction

The New Jersey defendants contend that they should be dismissed for several reasons.  First, they contend they should be dismissed pursuant to Rule 12(b)(2) because this Court does not have personal jurisdiction over them.  The undersigned agrees.

To properly adjudicate a Rule 12(b)(2) personal jurisdiction challenge, the Fourth Circuit directs that "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." <u>Carefirst of Md., Inc.</u>

23

v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). Because a §1983 action seeks relief against the personal resources of a state employee in his individual capacity, the court must acquire personal jurisdiction in order to enter a binding judgment. *See* Griffith v. Nixon, 518 F.2d 1195 (2d Cir.1975). Personal jurisdiction arises out of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

There are two types of personal jurisdiction: general and specific. A court has general jurisdiction over a cause of action that arises outside of the forum state. *See* Calder v. Jones, 465 U.S. 783, 786 (1984). General jurisdiction is permissible under the due process clause when the defendant has an enduring relationship with the forum state, and his connection to and activities in the forum state are so substantial that the defendant would expect to be subject to suit there on any claim and would suffer no inconvenience from defending there. "The essence of the issue . . . is . . . one of general fairness to the [defendant]." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445 (1952).

The United States Supreme Court articulated a two-branch due process test for determining specific jurisdiction. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291(1980). The first, the traditional minimum contacts branch, focuses on the defendant's connection with the forum state and the relationship between that connection and the litigation. Burger King Corp., 471 U.S. at 471-76. The second branch is frequently referred to as the fairness, convenience, or reasonableness branch. Beyond the requirement of minimum contacts, due process requires further factual evaluation to determine whether an assertion of personal jurisdiction comports with fair play and substantial justice. *Id.* at 476 (*quoting* Int'l Shoe Co., 326 U.S. at 320). As stated, the plaintiff has the burden of

24

establishing jurisdiction over the New Jersey defendants.   There are insufficient contacts for this Court to exercise either general or specific jurisdiction over the New Jersey defendants.

The only asserted contacts with the state of South Carolina were incidental to executing  the plaintiff's extradition to New Jersey.  Specifically, the plaintiff states the New Jersey defendants filed various forms and made multiple telephone calls to South Carolina.  (Pl.'s Mem. Opp. N.J. Defs.' Mot. to Dismiss at 8.)  This contact does not provide evidence that the New Jersey defendants purposefully availed themselves of South Carolina's laws and/or privileges.   Wright v. Linhardt, 2000 WL 92810 (D.Or. 1998)(unpublished)(holding plaintiff's allegation that a California AUSA misinformed the court does not provide the sufficient minimum contacts with Oregon to warrant the exercise of personal jurisdiction).  Instead, it evidences prosecutors engaging in discussions to have a defendant brought to another jurisdiction to be prosecuted.   Further, it would be unreasonable to exercise personal jurisdiction over such a prosecutor who is fulfilling his duty to fully prosecute suspected criminals to extradite a defendant back to the proper jurisdiction based on discussions with a prosecutor from another jurisdiction where the defendant was found. "Otherwise, all discussions between prosecutors attempting to obtain extradition or information about a defendant would satisfy personal jurisdiction requirements in a foreign jurisdiction in a subsequent civil action."  Wright, 2000 WL 92810.

The plaintiff's assertion that the New Jersey defendants purposefully availed themselves of the privileges of conducting activities in South Carolina by extraditing the plaintiff is without merit. Accordingly, the New Jersey defendants' motion to dismiss should be granted due to lack of personal jurisdiction.

**B.  Heck**

The New Jersey defendants also contend that the plaintiff's entire complaint is barred by Heck v. Humphry, 512 U.S. 477 (1994).   Although some of the plaintiff's claims are barred by Heck, the undersigned disagrees that the entire complaint is barred.

In Heck, the United States Supreme Court held that a court must "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487.   *See also* Edwards v. Balisock, 520 U.S. 641 (1997) (the preclusive rule of Heck extended to § 1983 claims challenging procedural deficiencies which necessarily imply the invalidity of the judgement.).   The rationale in Heck applies with equal force to Bivens actions. *See* Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir.1995); Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir.1995). In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended Heck to bar § 1983 actions that do not directly challenge confinement, but instead contest procedures which necessarily imply unlawful confinement. *Id.* at 646.

The Supreme Court noted that a suit for damages attributable to an unreasonable search may not necessarily imply that a plaintiff's conviction was unlawful because of doctrines like independent source, inevitable discovery, and harmless error.   Heck, 512 U.S. at 487 n. 7 (citing cases). The Supreme Court emphasized that "the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury . . . which, we hold today, does not encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Id.* Furthermore, a cause of action for at least nominal damages exists when a prisoner was extradited or transferred from one state to another state for criminal prosecution without the benefit of a pre-transfer hearing when he requested such a hearing.   Arebaugh v. Dalton, 730 F.2d 970, 972 (4th Cir.1984)

26

(*citing* <u>Cuyler v. Adams</u>, 449 U.S. 433, 449-450 (1981)).  Accordingly, <u>Heck</u> does not bar the plaintiff

from invoking § 1983 to assert a damages claim for illegal extradition. *See* <u>Harden v. Pataki</u>, 320 F.3d

1289, 1294-1302 (11th Cir.2003) (holding that a state prisoner's § 1983 claim seeking damages and

declaratory relief for the alleged violation of his federally protected extradition rights is not barred by

<u>Heck</u> ); <u>French v. Adams County Det. Ctr</u>., 379 F.3d 1158, 1160 (10th Cir. 2004) (same).  However,

that "failure to comply with state or federal extradition laws does not constitute a defense to a criminal

prosecution." <u>Wirth</u>, 562 F.2d at 323. Therefore, even if the plaintiff succeeded in proving his

extradition claims, such a finding would have no effect on the state criminal judgments under which

he is currently confined <u>Godfrey v. Washington County, VA, Sheriff</u>, 2007 WL 2405728 (W.D.Va.

2007).

     Here, the plaintiff is seeking actual and punitive damages and injunctive relief in the form of

an order setting aside the New Jersey conviction and sentence or alternatively an order directing the

BOP to vacate the New Jersey detainer and declaratory relief in the form of an order requiring the BOP

to recognize that federal inmates are entitled to a <u>Cuyler</u> hearing.  (Compl. at 26-27.)   Even if the

plaintiff ultimately establishes that the defendants violated his extradition rights, the plaintiff cannot

recover any relief which impact the validity of his underlying New Jersey convictions.

     The plaintiff would have to prove that he suffered some injury greater than that which he would

have suffered through an extradition in full compliance with state and federal laws without implying

the invalidity of his New Jersey conviction.  If "the extradition itself was justified, even though the

procedures used to accomplish it were deficient . . ., [a] plaintiff cannot recover for any injury caused

by the extradition; he can [however] recover for any injury, such as emotional distress, caused by the

deprivation of due process itself."  <u>Long v. Shillinger</u>, 927 F.2d 525, 528 (10th Cir. 1991).

27

Even under a liberal interpretation of the plaintiff's pleadings and submissions, it is clear that the "injury" for which the plaintiff seeks actual damages is that of having to endure a prison sentence for his conviction on the New Jersey charges. (Compl. at 26-27.)  The plaintiff attributes his New Jersey convictions and prison sentence to the defendants' denial of a pre-transfer hearing.  (*Id.*)  He also seeks prospective declaratory relief in the form of an order directing the BOP to provide a pre-transfer Cuyler order for all federal inmates in the future if they request one.  (Compl. at 27.)  Specifically, the plaintiff seeks:

> the issuance of an Order effectively setting aside the New Jersey State Court conviction and sentence . . . due to the fact that the conviction was obtained and sentence subsequently imposed in violation of federal law; or in the alternative; that this Court issue an order directing the Federal Bureau of Prisons to vacate and ignore the detainer issued by the State of New Jersey for the 18 month consecutive state sentence imposed July 21, 2006, due to the fact that said detainer is of no force or effect, due to the violations of the IAD, more specifically that the custody of the Plaintiff was illegally obtained by New Jersey, and that the detainer is illegal.

(*Id.*)   This conclusion is also bolstered by the plaintiff's response to the federal defendants' motion to dismiss.  He states that "it will soon matter not whether the pro se plaintiff can advance his claims: because in just six short months, Plaintiff will complete his federal term of incarceration and then be transferred to the State of New Jersey to serve the illegally imposed term of incarceration there." (Pl.'s Mem. Opp. Fed. Defs.' Mot. to Dismiss at 1.)  The plaintiff's trial and confinement in New Jersey were obviously not an injury or harm compensable under §1983/Bivens, "since the violation [of the IAD Act] did not cause the trial or confinement that presumably would have resulted as well had the Act been followed."  Bush v. Muncy, 659 F.2d 402 (4th Cir. 1981)

Although he alleges he was denied placement in a halfway house, this again goes to his conviction because it is his New Jersey convictions and detainer which prevented him from being eligible for placement in a halfway house.  Further, the undersigned notes that the plaintiff alleges that

28

while in New Jersey he was forced to pay housing and medical co-payments in violation of the IAD

Act because the IAD Act provides that the receiving state will assume all housing and medical costs.

(Compl. at 18.)  He further contends that New Jersey defendant Menchen signed the agreement

whereby New Jersey agreed to pay these fees and New Jersey defendant Muse allowed the fees to be

collected.  (*Id*.)[14]  However, as discussed above the undersigned concludes that this Court does not

have jurisdiction over the New Jersey defendants.  Thus, to the extent that the plaintiff seeks relief

pursuant to § 1983/Bivens action from his New Jersey convictions, such claims are barred by Heck.[15]

### C. Prosecutorial Immunity

The New Jersey defendants also contend they are entitled to prosecutorial immunity.  The

undersigned agrees.

The undersigned finds that the named New Jersey defendants are immune from such liability

because they were acting within the scope of their official capacities.  Imbler v. Pachtman, 424 U.S.

409 (1976); Swain v. Hunt, 865 F.2d 1259 (4th Cir.1988). Generally, a "prosecutor performing the

---

[14]The undersigned notes that in Ray v. Merline, 2007 WL 2123577 (D.N.J. 2007), the plaintiff sued other defendants contending they had "violated his rights under the Interstate Agreement on Detainers Act by charging him a $50.00 user fee and a $10.00 charge for each medical/dental visit."

[15]The undersigned notes that the plaintiff fails to allege any compensable actual injuries caused by the denial of a pre-transfer hearing distinct from the injury of being convicted and sentenced. In the absence of an actual injury, a constitutional deprivation will justify only nominal damages.  Carey v. Piphus, 435 U.S. 247, 266 (U.S. 1978).  *See also*  Farrar v. Cain, 756 F.2d 1148, 1152 (5th Cir.1985) (nominal damages for violation of "civil rights");  Smith v. Coughlin, 748 F.2d 783, 789 (2d Cir.1984) (nominal damages for violation of Sixth Amendment rights);  Kincaid v. Rusk, 670 F.2d 737, 746 (7th Cir.1982) (nominal damages for violation of First Amendment rights); Familias Unidas v. Briscoe, 619 F.2d 391, 402 (5th Cir.1980) (same).  Finally, punitive damages may be awarded upon a finding that the defendant showed "reckless or callous disregard for the prisoner plaintiff's rights" or intentionally violated his rights.  Smith v. Wade, 461 U.S. 30, 51 (1983).  Punitive damages, however, are "never awarded as of right, no matter how egregious the defendant's conduct."  *Id*.

duties of initiating a prosecution or presenting a case is entitled to absolute immunity in an action for damages claiming that the prosecutor violated the plaintiff's constitutional rights." Ostrzenski v. Seigel, 177 F.3d 245, 249 (4th Cir. 1999). Thus, a prosecutor's acts "intimately associated with the judicial phase of criminal process" are afforded absolute immunity. *Id.* at 250, *quoting* Imbler, 424 U.S. at 430-31. On the other hand, prosecutors are not entitled to absolute immunity when they are performing investigative or administrative functions. Burns v. Reed, 500 U.S. 478, 491-93 (1991). *See* Buckley v. Fitzsimmons, 509 U.S. 259, 273(1993) ("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."). Further, the Fourth Circuit Court of Appeals has held that absolute immunity applies to protect prosecutors for their role in extradition proceedings. *See* Dababnah v. Keller-Burnside, 208 F.3d 467, 471-72 (4th Cir. 2000). Accordingly, based on the foregoing, the New Jersey defendants' motion to dismiss should be granted.

## VII. CONCLUSION

Based on the foregoing, it is recommended that the plaintiff's motions for default (documents # 41 and 66) be DENIED; and the federal defendants' motion for summary judgment (document # 53) and the New Jersey defendants' motion to dismiss (document # 87) be GRANTED.

Further, it is recommended that the plaintiff's motion for a deposition subpoena (document # 52), for an order to show cause (document # 63), and to stay (document # 64); and the federal defendants' motion for a protective order (document # 61) be DENIED as moot. Additionally, it is recommended that any other outstanding motions be deemed moot.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 22, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**